**STATE, Plaintiff, v. WOODVILLE APPLIANCE, INC., et, Defendants.**

Lucas County Court, District No. I.

Decided February 18, 1960.

Gene W. Krick, for the Association for the Remembrance of the Sabbath and the Joint Committee for the Observance of Sunday, Toledo, Ohio.

Friedman, Cohen, Schwab and Adler, Toledo, for Woodville Appliance, Inc., Earl Eggert and Nat Welch.

Mark Winchester, not present in court January 26, 1960, for George O. McCorkel.

(Fred G. Carpenter, J., Lucas County Court 5, presiding for David C. Christensen, J., Lucas County Court 1.)

## OPINION

By CARPENTER, J.

On December 17, 1959, Margaret Bollinger, an employee of the Association, as hereinbefore set forth, filed affidavits in County Court I against all of the defendants, alleging that on Sunday, December 13, 1959, said defendants did violate §3773.24 R. C., and thereupon was issued a subpoena for defendants to appear and answer the charges therein set forth.

The affidavits were in form and substance as follows: "That each defendant did, on the 13th day of December, 1959, in the County of Lucas and State of Ohio, suffer or permit such building or place to be open for transaction of business, or required a person in his employ or under his control to engage in common labor or to open such building or place for the transaction of business on Sunday in violation of §3773.24 R. C."

Sec. 3773.24 R. C., as set forth in §3773, Title 37, Health, Safety and Morals, R. C., page 136, and in supplement 1959 Chapter 3773, Title 37, page 19, R. C., are hereinafter set forth:

"Sec. 3773.24 R. C. (§§13044, 13045, 13046 GC). Laboring or requiring employee to labor on Sunday.

"No person who is over fourteen years of age shall engage in common labor or open or cause to be opened, a building or place for transaction of business, or require a person in his employ or under his con-

trol to engage in common labor on Sunday. In prosecutions under this section complaints shall be made within ten days after a violation.

"This section does not apply to work of necessity, or charity, and does not extend to persons who conscientiously observe the seventh day of the week as the sabbath, and abstain thereon from doing things prohibited on Sunday.

"This section does not prevent emigrating families from traveling, watermen from landing their passengers, or keepers of toll bridges, tollgates, or ferries from attending them on Sunday."

- - - - - - - - - -

"No person, firm, or corporation shall engage in common labor or suffer or permit a building or place to be open for transaction of business, or require a person in his employ or under his control to engage in common labor or to open a building or place for the transaction of business on Sunday. In prosecutions under this Section complaint shall be made within ten days after a violation.

"This Section does not apply to work of necessity or charity, and does not extend to persons who conscientiously observe the seventh day of the week as the Sabbath, and abstain thereon from doing things prohibited on Sunday.

"This section shall not apply to:

"(A) Traveling or the providing of services and commodities incidental thereto;

"(B) Recreation, sports, amusements, entertainment, or exhibitions or the providing of services and commodities incidental thereto;

"(C) Fairs held under the authority of the state or a political subdivision, or independent fairs, or the providing of services and commodities incidental thereto;

"(D) The operation of publicly owned places of entertainment, recreation, or education, by a public officer, concessionaire, exhibitor, or employees of all or any of them, or any other person, or the providing of services and commodities incidental thereto."

The Court finds no reference being made to the repeal of previous section after adoption set forth in Supplement.

However, in memorandum submitted by Counsel for complaining witness, the affidavits will be taken, as filed in accordance with statute as amended by House Bill 1031, effective July 17, 1959.

The cases being consolidated upon the issues raised by the Motion and Memorandum of the defendants and the Memorandum contra of Motion to Dismiss by attorneys representing the complaining witness.

The motion of the defendants raises two points of law.

1. The sufficiency of the allegations in the affidavit,

2. The constitutionality of enactment.

Upon the sufficiency, the Court is of the opinion that the two essential allegations are not alleged:

1. That the work was not of necessity or charity;

2. That the defendant individuals did not conscientiously observe the seventh day of the week as the Sabbath, and abstain thereon from doing the things prohibited on Sunday.

The supplemental sections of §3773.24 A, B, C & D, R. C., are defen-

sive matters, however, in the conclusion of the Court, taking the Motion as a Demurrer upon the constitutionality of the act; upon consideration thereof, the demurrer and considering all the acts in relation to the Sabbath desecration, the Court finds the Demurrer well taken and that §3773.24 R. C., is unconstitutional and void and by reason thereof, the judgment of the Court is that the defendants all be discharged and affidavits dismissed; and it is further adjudged that the complaining witness pay the costs of prosecution.

The question before the Court is not whether Sunday closing laws are good or bad, but rather in what way §3773.24 R. C., violates any of the rights and privileges guaranteed to the people of this State by the Constitution and Bill of Rights.

The Court is of the opinion that said statute considered is:

1. arbitrary and capricious and unreasonable
2. unreasonable classifications
3. grant special privileges to few
4. vague
5. contrary to constitutional provisions and Bill of Rights.

The reasons for the judgment of this Court in determining the issues joined is based upon the fundamental rights of sovereignty of the people; and that the legislative enactment and the constitutional provisions are clearly incompatible.

Realizing that only when changing conditions make it necessary the constitution is amended; but the statutory law can be repealed and a law repugnant to the welfare of the people and in violation of the constitutional provisions is void and of no effect.

The County Court system is a new creation in the judiciary of our State and a Court of first resort to the people: the Court has the duty and the obligations to protect the citizens in their rights and privileges under the constitution of the State of Ohio and the Bill of Rights.

Under our Constitution the church and the state are separated; under Mohammed, civil law and religious law are not separated and the interpretation different. Therefore, to get the correct interpretation of the law in Ohio in its relation to Sabbath desecration it is necessary to trace the stages of the Sabbath desecration laws or blue laws originating in early days, and detecting the influence of religious leaders and others in our laws.

The Ohio Courts have not as yet determined the matter of the constitutionality of §3773.24 R. C., as amended by 128 House Bill 1031 effective 7/17/59. It was the intent of religious leaders to have the people keep the Sabbath sacred and that is commendable; religion is necessary to the peace and welfare of our country, and in the early decisions in Ohio, Judge Thurman, 2 Oh St 387, Bloom v. Richards, said, "Christianity is a part of the common law of England, but not a part of the law of this State; nor has a government ever been vested with authority to enforce any religious observance, because it is religious; the object of the law is over things temporal but not spiritual."

The sole motive of the blue laws was to contain "worldly business" in accordance with the then predominate faith.

Judge Thurman, in Bloom v. Richards, further said, "it is not mere

toleration that every individual is protected in his religious belief, but upon the indefeasible right of conscience, which are beyond the control of interference of any human authority." Consequently, there is a conflict between the legal theories and religious theories. Under the Christian theory, man is a personality in his relation to his faith and developed for the glory of God; in Communism, man is merely a creature of man; under Humanism, man is developed to the high ideals of brotherhood and service as set forth by the life of Jesus Christ and Budha.

So under the Constitution and the Bill of Rights guaranteeing religious freedom to all citizens there are many sects, they differ in faith but in unity of purpose all strive for the betterment of man in his relation to man and the precepts of his faith.

Some sects observe Friday as Holy Day, others Saturday, and some Christians observe Sunday, the first day of the week; what matters the calendar date so long as in the conscience of the observer he or she does not breach the tenets of his faith; it is the observance of the faith that is essential to building a good civil government.

Guaranteed by the Bill of Rights and the Constitution, freedom of Religion and right of conscience is fundamental, and when the individual conscience is not detrimental to the health, welfare and the safety of the State, then man can determine from his religious concepts and faith whether it is right or wrong to buy on Sunday, play golf, go to baseball or football games, go to a park where non-necessities are offered for sale by a person who may or may not be violating the law.

Observance to the tenet of the church is a moral and religious matter. If I breach the tenets of the church or the moral law of the man I am not keeping faith; but if I conceal it, my conscience is not clear and so in law in its interpretation there must be a deep and vital sense of constitutional conscience. The Judiciary is the final conscience of the nation and no act that infringes upon the rights of the people, the dignity of a human soul, the nobility of a man's task in the light of the present times, should only be decided by what is right and human.

The Court in its interpretation of the statutory law must be abreast of the times; we are not living in the horse and buggy days nor in the days of the doctrine of Hell's fire and damnation. The Court cannot remain stagnant; we are in a new age, a modern economic age which demands of man that he devote time to his assigned task, on his Holy Day, on court decreed day of rest, but the age and the Unions have protected him in his day of rest. What may have been good law in the early 1800's is archaic today, and the interpretation must be vital in its relation to man.

Even the tenets of the church have changed because it was necessary to give more individual freedom of conscience to members.

Today there is no common labor in Ohio as set forth in §3773.24 R. C., or in the United States. The greatest contribution that labor unions have made towards mankind is the elimination of the idea of master and servant and elevating man, who was made in God's image and likeness, to a classification of his efforts in accordance with his ability and

the nobility of the purpose of his task; accordingly under the United States Department of Labor, the task of man is classified according to D. O. T., Dictionary of Occupational Titles and enumerated as, unskilled, semi-skilled, skilled, professional, managerial, technical, clerical and sales, and also spot labor.

Thus man has become an entity in accordance with his efforts, and becomes an employee, instead of a servant.

Has the legislature so progressed? When it ignores that man now is not a servant but the master of his own efforts.

Examine the early decisions of the Court of other states and you will find the prosecutions of the Jews, Seventh Day Adventists, Seventh Day Baptists and others; under our present law §3773.24 R. C., those of Islam faith who observe the sixth day of the week as Holy Day are not exempt, and there is a large segment of Islams in Ohio.

Now as to a practical solution, the Jewish merchant can by law operate or open his place of business on the "day of rest" as decreed by the Court, so can all others that observe the seventh day of the week, provided he refrains from doing the things prohibited on Sunday on his day of rest.

Now other things prohibited on Sunday as set forth in §3773.23 **R. C.,** then in Supplement §3773.24 **R. C.,** the Legislature makes exceptions **A, B, C & D,** to some of the acts as prohibited by §3773.23 **R. C.** Sec. 3773.24 **R. C.,** does not mention a day of rest, the Courts have determined that that is what the Legislature meant, the day of rest is a day of prayers and communion with God. In the Christian world Sunday has been determined as the day of outward manifestation of our faith and observance and communion with God. If we are truly Christians, we observe seven days a week, there are no days of rest.

Under the Statute those exempted in order to defend must abstain from doing the things prohibited on Sunday, the conclusion being that their rights of conscience in their faith is determined by legislative control, contrary to their religious belief.

The interpretation of the law must be vital to the economic conditions as they exist today; under present automation it may be possible that a person may work on his holy day; the right to a day of observance of his faith should not be denied. The reason for those who observe the sixth and seventh day as the Sabbath is based upon religious faith, and religious in its nature, not curtailing it but acknowledging it as a distinct and separate religious faith.

In Curwin's statutes, 208, in the year 1831 the statute provided no common labor, no sporting, no fishing permitted on Sunday, there were no exceptions. Truly that was the influence of religious doctrine of the day.

I thoroughly agree with the religious leaders of the Christian faith that the custom of business houses, stores, et cetera abide by their conscience in their relation to their belief, but the theory of religious denominations, advocating legislation instead of religious admonitions is not for the best interest of all people.

In the pamphlet issued by the association fostering Sunday closing, Father John E. Kelly said, "It takes two to make a sale."

Cardinal Spellman has called Sunday shopping "an insidious practice."

Other churchmen are opposed to the existence of commercialism on Sunday. Christians should observe Sunday in accordance with the teachings of their faith, however, should the Christians deny to other faiths their observance of a holy day or should the Court decree a day of rest?

Any one interested in legal philosophy is obliged only to find the changing view of legal concepts as stated within Ohio unreported cases and the first code of Ohio laws and notice how the people revolted against the usurpation of power not granted to the legislature and how professional pressure groups secured this exemption and that exemption as set forth in §3773.24 R. C.

We find that in 1898, State v. Powell, 324, it was unlawful to play baseball on Sunday, because it was decreed a day of rest by legislature; but it was not a part of §7032 R. S., the Court decrees Sunday a day of rest. Today millions throughout our nation observe the day of rest in going to baseball and football games, playing golf, picnics, creating a better family tie and peace and enjoyment of their liberties. "Law is the common conviction of right" and must be determined for the survival of our growth and development in its temporal aspect.

In Erwin H. Pollock's Ohio Unreported Cases, page 71, Rutherford v. McFadden, Judge C. J. Huntington says, "It is the duty of the Court, to expound, conserve and declare the law unconstitutional" "all powers not hereby delegated remain with the people" "when the legislature steps beyond the bounds assigned them and act without authority."

You will notice that the legislature has carried the term "common labor" from its first inception to the latest revised statute.

And with the latest decision of our Courts, holding the legislature has the authority to declare Sunday as a day of rest, they are placed in the position of having to declare another day as a day of rest for the clergy who preach on Sunday and the rest and those exempted by Sections A, B, C & D.

If you care to trace the early decisions in Ohio, the Court attacked "worldly business" on Sunday but held in 4 Oh St 566 (310), McGatrick v. Wason, that loading a boat was a work of necessity.

To determine that it is a work of necessity one must be subjected to arrest and prosecution and have the Court so determine because it is not defined what is a work of charity or what is a work of necessity.

The legislature has failed to distinguish between temporal and spiritual laws. There is no doubt that the matter of religion is connected with the legislation.

In the first instance there is no provision for other faiths than those of the then predominate Christian faith.

Then how does inclusion of those of the Jewish faith and others observing the seventh day of the week with the proviso that on the seventh day he observes the things prohibited on Sunday, if that does not bring religion into the motive of the legislation when his faith would not prohibit the doing of the act on his day of rest?

The initial object of the legislation of Blue Laws was to carry out the custom of that day, to avoid commercialism on Sunday, when

not tied into a religious doctrine, it is admirable in theory. Sunday is observed as a day of grace and communion with God in the Christian religion. Sunday, the day to give man's faith and hope in God should not be controlled by legislation.

Religion in its common acceptance is the recognition of and belief in a superior human power or powers to whom obedience, reverance and worship. are due, the spiritual attitude of those recognizing such a superior human power, a manifestation of such feeling in conduct or life, any system of faith in worship.

The question then is the liberty of the individual against governmental usurpation, due to the people's submissiveness it is the duty of the Courts to protect and preserve individual liberties of man, regardless of the fact that the legislature does not respect its own powers.

We are a nation of free men under our constitution; but if the individuals cannot see his rights gradually encroached upon, then under the oath of the Court it is the duty of the Court to protect the spirit and intent of our constitution that we may live under and by the guarantees reserved to the people.

The first of the five propositions set forth is that Statute §3773.24 R. C., is arbitrary, capricious and unreasonable. In State v. Kidd, 5 O. O. 202, 167 Oh St 521, the Court said, "so long as those classifications are not arbitrary, capricious and unreasonable." In the above case the Court did not have to consider supplementary Section A, B, C & D. Section B exempts to sports, amusements and the services and commodities incidental thereto.

Section C exempts state and county fairs and the services and commodities incidental thereto.

The legislation does not apply to Sunday baseball players, football players, hocky players, basketball players, or to those selling services and commodities thereat, none are required to observe Sunday as a day of rest as set forth in the same case.

The law as enacted is unjust and partial. There is no basic reason for Sections B, C & D; there is no relation to the enactment and to the health, safety and morals to the state.

There are so many exceptions in §3773.24 R. C., it is impossible of execution.

As a matter of fact the Orthodox Jews observe their Sabbath the sixth day from sundown to sundown of the seventh day. So according to the statutes, if they observe the tenets of their faith they could open their stores after sundown Saturday, but according to the Statute would be. in violation if they opened Sunday because they did not observe the calendar day Saturday.

Forchheimer v. LaBlond, 108 Oh St 41, sets forth the matter of impossible execution, and this is true in this matter.

The legislature has ventured so far by special legislation in relation to State and County fairs as to open the gates to commercialism.

This was passed as an emergency measure to insure the financial success of the fairs and to avoid confusion of the enforcement of Sunday prohibitions, however, the true object of the Blue Laws was to contain commercialism.

State v. Haase, 97 Oh Ap 377, on page 387, Judge Skeel says, "Sunday closing being in the interest of public welfare and support of **religious and devotional life of the community**, providing a day of rest and **possibly recreation.**" Page 388, "to promote peace, health and well-being of society, a **day of rest and religious devotion.**" Page 389, "a **religious or divine origin.**"

Did not the Court then consider Sunday as a day of devotional life it is then necessary to recognize Sunday as the Christian day of worship, except those who observe the seventh day'of the week as Sabbath. The fallacy of the enactment is in its operation. An Orthodox Jew and a Christian engage in busines, the Jew observes sundown to sundown and works Saturday night, so does the Christian. On Sunday the Christian observes his day of rest. How can you enforce the legislation?

"The act does not reasonably tend to accomplish the lawful object for which it was passed," State v. Hanlon, 77 Oh St 19.

One of the tests is whether it attempts to validate and legalize a course of conduct the effect of which the constitution forbids. It is the operation and effect of the act in practical operation and not by title or declared purpose.

There are no rules and standards. What is a work of necessity? What is a work of charity? In Straka v. Ohio, 16 N. P. (NS) 554, the selling of the loaf of bread was held to be illegal, the selling of a bottle of milk is legal. The selling of meat, Beal v. State, 9 Oh Ap 519, is illegal; yet making a contract is not common labor, McGatrick v. Wason, 4 Oh St 566. What is common labor according to the act, any act that is not intellectual. In Kut v. Abbers, 76 Oh Ap 51, under the decision of the Court it was held that Kut, an Orthodox Jew, traditionally keeping his faith from Friday sundown to Saturday sundown which constitues his Sabbath, was not entitled to unemployment compensation if he refused to work on his Sabbath.

Under §3773.24 R. C., Kut would be obliged to abstain from work on Friday to Saturday and he must refrain from doing the things prohibited on Sunday. On page 56, the Court said, "In this case if unemployment compensation was given, discrimination would be in his favor.'" Could any act be more arbitrary, capricious and unreasonable?

In Wallace v. B. U. C., 81 Abs 495, the Court held that the Sunday work was illegal and claimant justified in refusing employment regardless of religious beliefs. (Note: All the above cases were decided prior to July 7, 1959)

Proposition 2—Unreasonable Classification.

Justice Harlan, in California Reduction Company v. Sanitary Reduction Work, 199 U. S. page 306, said at page 324, "This Court has said that the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by governing authority of the country essential to safety, health, peace, good order and morals of community."

In Froehlich v. City of Cleveland, 99 Oh St 376, "The state and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community.

But neither the State or municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view and must be impartial in operation and not duly oppresive upon individuals, must have a substantial relation to their purpose and must not interfere with private rights beyond the necessities of the situation."

Is §3773.24 A, B, C & D, R. C., discriminatory as to members of the same class. In Frecker v. Dayton, 153 Oh St 14, Ordinance discriminates among persons following the same occupation or business.

It is the classification and the granting to others privileges denied to those in the same business or occupation.

Under the rule of sui-generis the classification must be of same kind or class.

Under §3773.24 B, R. C., a concessionaire in the ball park can sell peanuts, popcorn, soft drinks, 3.2 beer, however, one on the outside is in violation of the law, so the work of necessity applies to those on the inside but not outside.

How can one decide a work of necessity or charity? He must appeal to a Court or violate the law and make his defense.

Is manual labor working for a charitable hospital on Sunday in violation? In Xenia v. Schmidt, 101 Oh St 437, the Court said, "Is there a real and substantial distinction in the classification, or is it merely artificial, arbitrary or ficticious, made for the purpose of avoiding constitutional requirements?

Proposition 3—Grant Special Privileges to Few.

A General Law must conform to the constitution. Sec. 3773.24, exemptions A, B, C & D, R. C., discriminate unreasonably between individuals in the same class. Williams v. Donough, 65 Oh St 499, Article B of the exemptions provides for the services and commodities incidental thereto. So does Section C provide the same. Section D sets forth the operation of publicly owned places of entertainment, recreation or education by a public officer, concessionaire, exhibitor or employees of all or any of them or any other persons or the providing of services and commodities incidental thereto, thus granting special privileges to those persons furnishing services or commodities. These people are exempted by law from complying with the provisions relating to labor on Sunday and are not obliged to observe Sunday as a day of rest. These would include ticket sellers, sales personnel, hawkers, peddlers, managers, concessionaires, exhibitors, or any other person. Yet the classification is vague as to what they can exhibit or perhaps sell. Those in the same classification, or sui generis, that are not included in this must observe §3773.24 R. C., and must not engage in common labor, permit a building to be opened for transaction of the same business as is conducted within the amusement, sport, fairs, or publicly owned places of entertainment. The law does not apply equally to all. The day of rest does not apply equally to all. Special privileges are therefore granted to few in comparison to the vast numbers of those upon whom the act could be enforced. The enforced day of rest grants a privilege to the clergy, who work on Sunday, not enjoyed by any other classification, except those who observe the sixth and seventh days of the week as Sabbath.

Proposition 4—Vague.

Courts have set forth that the function of the Court is to determine "whether the law is reasonable, comprehensive in its application and has a reasonable relation to the preservation of the health, safety and morals."

This is answered by the fact that the legislature, in 128, House Bill 1031, effective July 17, 1959, secured the passage of an emergency bill to exclude State and County fairs from the provisions of §3773.24 **R. C.**, due to the fact that the present confusion over the enforcement of "Sunday Prohibitions" and such confusion should be eliminated as soon as possible."

In **State v. Kidd, 167 Oh St 521, 5 O. O. 2d, 202,** the Court stated, "work of necessity or charity" is exempted from the operation of this section. The word, "necessity is an elastic one, and what constitutes work of necessity is often a question of fact dependent on the circumstances surrounding the particular case."

However, in **State v. Ullmer, 105 Oh Ap 546,** the Court held, "prohibiting labor or requiring an employee to labor on Sunday is a constitutional exercise of police power." The Court says that the legislature has the authority to designate a day of rest; it also says "so long as the specific law has a reasonable relation to one or more of those objects and **operates uniformly.**"

The Court further says that the act has any relation whatsoever to religion or man's relation to his God; yet the exemption is set forth by those observing the seventh day as Sabbath and refraining from doing acts prohibited on Sunday.

Then why the many exceptions? How do the service organizations avoid the penalties? Gas stations, restaurants and hotels, have they been declared acts of necessity? Where in §3773.24 **R. C.,** is a day of rest mentioned?

It came about through religious conceptions that Sunday, then the day of observation of prayer and communion with God by Christian majority. What about the men and women engaged in railways, transportation, maintenance of buildings, where the other classifications, "Intellectuals may work"? Was the legislature right in saying **"due to confusion"?** Where are we led by the enactment of special exemptions **B, C & D?** Vague, confusion and more confusion.

## CONSTITUTIONAL PROVISIONS

Our basic law of rights and privileges are contained not only in the constitutions of Ohio and the United States, the Bill of Rights, but in the reasons for our separation from England as set forth in the Declaration of Independence. And it was found fundamental that our forefathers did protect the people from the usurpation of power by legislative enactment.

One of the reasons set forth therein was the attempt of their legislature to extend unwarranted jurisdiction over us.

Calvin Coolidge said. "Power and authority was given by consent of the people to apply equally to all."

The legislature is dedicated under oath to maintain the rights of the people; the power of the people is superior to the legislation and the Court should protect the people from dangerous innovations.

In re Steube, 91 Oh St 135, the Court said, "While it is within the power of the State to guard public morals, the public safety and public health, as well as to promote the common good, yet in devising means for such purposes the provisions made must be reasonable, legislature cannot make unreasonable provisions."

Article I of the Bill of Rights, the right to freedom and protection of property, all men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety. In Krause v. Cleveland, 66 Abs 417, the Court said, "freedom of a religion has a dual aspect, freedom to believe, and freedom to act exercising such beliefs; the first an absolute right, the second, subject to regulations for the protection of society, and when the State and the proper and lawful exercise of its peace powers seek to obtain a permissible end which is both necessary and desirable, the constitutional guarantee must yield to the regulation in the interest of public welfare."

Article II of the Bill of Rights, all political power is inherent in the people, government is instituted for the equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary; and no special privileges or immunity shall ever be granted that may not be altered, revoked or repealed by the General Assembly.

In Steel, Hopkins and Company v. Miller, 92 Oh St 115, the Court held, "the police power is the expression of the popular conception of the necessities of social and economic conditions."

Section 7 of the Bill of Rights, all men have the natural and indefeasible right to worship almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect or support any place of worship, or maintain any form of worship, against his consent and no preference shall be given, by law, to any religious society or shall any interference for the rights of conscience be permitted. It shall be the duty of the General Assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of his own mode of worship.

The Supreme Court of the United States, McCollum v. Board of Education, 333 U. S. 203, says, "the manifest of the men who framed the institutions of this country was to have a state without religion and a church without politics." That is to say, they meant that one should never be used as an agent for the purpose of the other, for that reason they built up a wall of complete and perfect partition between the two, surely it would be regarded as using the State as an agent for the purpose of the church to call upon the authority and power of the State to coerce the mother to send the child against her consent to any school extolling the tenets of any religion."

The format of the law has been changed, however, the objective of the law, the desecration of the Sabbath remains.

Desecrate means the disregarding of the sacredness thereof. Sacredness is essentially spiritual action; an act in disregard of faith, and faith is religion.

Consequently any act in the support of religious and devotional life of a community is contrary to the intent and purpose of right to conscience as guaranteed by the Bill of Rights.

So when the Court says, as set forth in **State v. Haase, 97 Oh Ap 377, page 388,** "Sunday should be devoted to rest and religious devotion," page 389, "Such laws are said to have a religious or divine origin." There is no doubt that the desecration laws have been upheld, but this opinion concerns only §3773.24 **R. C.,** with its exceptions, **A, B, C & D,** as of July 17, 1959. It is not amiss for the Court to take into consideration the fact that those excluded by the exemptions or exceptions do not observe the day of rest; that others not exempt cannot, due to their employment, observe the first day of the week as a day of rest.

In view of the fact that our economic pattern has changed since the inception of the Blue Laws; the fact that at its inception a classification of common labor and intellectual attainments were made contrary to the belief that all men are created free and equal.

The economic day of rest or day off is set forth in a man's work schedule, shall the Court enforce another day off or make another exception.

Article 2—1D of the Constitution states that the legislature may pass emergency laws for the immediate preservation of public peace, health and safety.

Under an emergency measure for the immediate preservation of peace, health and safety and to insure the Sunday operation of State and County Fairs, which operation is vital to the success of such Fairs and is of great importance to the health and welfare of the people, and the confusion over the enforcement of Sunday prohibitions should be eliminated.

The conclusion is that the legislature has set forth in **A, B, C & D,** completely side-track the purpose of the transaction of business on Sunday and the legislation is arbitrary and capricious.

The mere statement that it is for the peace, health and welfare must be tested in crucible of actuality and it is so stated for the success and financial interest, commercialism, violating the original concepts of the act.

In Demare v. Hudson, 180 CC, 890, a one-half holiday or Saturday was held unconstitutional. In Rosen v. State, 30 NP, New Series, 236, in reference to the construction of Jewish Sabbath to construe it to mean Friday midnite to Saturday midnite would make the provision useless. In Kimaline v. State, 5 Ohio NP, New Series, 417, the construction of manual in contradiction to intellectual. In **Palmer v. Tingle, 55 Oh St 421,** the Court sets forth that a public policy of the State is to be found in this constitution. For these reasons, the Court feels that §3773.24 **R. C.,** is unconstitutional and void, taking into consideration exemptions **A, B, C & D.**